UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIUS JAMES MONYOUKAYE, <br><br> Petitioner, <br><br> v. <br><br> B. PLUMLEY, Warden, <br><br> Respondent. | No. 1:18-cv-00095-SKO (HC) <br><br> **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** <br><br> **(Doc. 1)** |

Petitioner, Julius James Monyoukaye, is a federal prisoner proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1] Petitioner alleges two grounds for habeas relief: (1) insufficient evidence; and (2) hearing officer bias. Having reviewed the record as a whole and applicable law, the Court will deny the habeas petition.

I. **Background**

On December 19, 2011, the U.S. District Court for the Middle District of Pennsylvania sentenced Petitioner to 180 months' imprisonment for distribution and possession with intent to distribute heroin, marijuana, and 50 grams or more of cocaine. He is currently incarcerated at the

---

[1] Pursuant to 28 U.S.C. § 636(c)(1), both parties consented, in writing, to the jurisdiction of a United States Magistrate Judge to conduct all further proceedings in this case, including the entry of final judgment.

1

Federal Correctional Institution in Mendota, California, with a projected release date of June 27, 2023.

On March 5, 2016, Petitioner received a notice of a disciplinary hearing for stalking, (BOP Code 225),[2] and insolence, (BOP Code 312), in violation of the Bureau of Prison's Code. In the Incident Report dated March 3, 2016 Correctional Officer ("CO") E. Espinoza described Petitioner's behavior as follows:

> The following are dates where [Petitioner] . . . has made comments directed to me: 02/11/16 at 7:50 PM [Petitioner] came up into my office and said he couldn't wait until my 30 days were up in this unit because he didn't like me working in C1; 02/25/2016 at 10:45 AM [Petitioner] had a talk with counselor J. Gomez and myself about his behavior towards me and was warned. He was upset with me because I did a cell search in his cell and thought I was singling him out, but the two weeks I was there his cell was only searched once by me and it was random; 02/26/2016 at 8:20 PM [Petitioner] came into my office to address me about the meeting we had with counselor J. Gomez and stated that if he wanted to he could file paperwork on me so that I could be gone because I was very disrespectful. [Petitioner] kept questioning my authority as to the way I ran C1 unit and didn't like that I gave a direct order to only have 4 people at the table at all times. He once told me, "I would have never known the sound of your voice had you not interfered with my game playing and now we have a problem." I told him "it's on the unit rules and he could read them yourself." He then stated, "You just don't get it do you? Like, it's not making sense in your head is it?" I told him "No, but the only thing I do get is that you will only have four people playing cards at that table." When [Petitioner] would return from Food Service after Mainline he would see that I was the officer on duty and would make little comments under his breathe like "not her again" or would look at me and shake his head. Another day, when it was a dress down day, I had a San Antonio Spurs sweater on and as he passed by me on a move he looked at me up and down in a condescending manner, laughed and stated, "take that dumb sweater off." After the incidents kept re[ ]curring, I felt he was taunting and harassing me. His tone of voice became more aggressive toward me as well.

(Doc. 13-2 at 12-13.)

On March 22, 2016, Disciplinary Hearing Officer ("DHO") D. Perez conducted a disciplinary hearing. At the disciplinary hearing, Petitioner received a copy of the Incident Report and stated he understood the report and his rights. He did not request a staff representative or

---

[2] Stalking is defined as "repeated behavior which harasses, alarms, or annoys, the person, after having been previously warned to stop such conduct. 28 C.F.R. § 541.3.

2

witnesses at the hearing. Petitioner made a statement at the hearing,

> All that is wrong. I never made those comments. She was the one who talked to me. I did say that she was working in the unit for the next 30 days. Yes, she did search my cell and did take my headphones and I tried getting them back. Yes, I did say not to talk to me because other inmates were making comments about her.

*Id*. at 6.

The DHO concluded that Petitioner violated BOP Code 225, stalking. The DHO made the following findings and conclusions:

> Your due process rights were read and reviewed with you by the DHO at the time of the hearing. You stated that you understood your rights, had no documentary evidence to present, and requested no witness and no staff representation. You initially requested [a] staff representative and an unknown staff witness. During the DHO hearing you declined and wanted to proceed with the DHO hearing.
>
> When the DHO received your incident report, he noted that you did receive a copy of the incident report within the twenty-four hour time frame. A copy of the incident report was provided to you on March 2, 2016 at approximately 6:45 a.m. The DHO feels that you were adequately notified of the date of the incident and that none of your rights were violated.
>
> The DHO finds that you did commit the prohibited act of stalking, code 225. He based his findings on the account of the reporting officer that on March 3, 2016 at approximately 8:25 p.m. while conducting rounds in C-1 on the upper tier [CO Espinoza] passed [Petitioner] . . . and he made a comment towards the reporting officer and said "Stop looking at me like that." The reporting officer asked [Petitioner] what did he say and he repeated himself. [Petitioner] continuously makes small remarks directed to the reporting officer and has been warned to stop.
>
> At the initial investigation you stated, "I am innocen[t]".
>
> At the [Unit Disciplinary Committee ("UDC")] hearing you stated, "I didn't do this.[ ] She misunderstood what I said."
>
> At the DHO hearing you stated, "All that is wrong.[ ] I never made those comments.[ ] She was the one who talked to me. I did say that she was working in the unit for the next 30 days. Yes, she did search my cell and did take my headphones and I tried getting them back. Yes, I did say not to talk to me because other inmates were making comments about her." Though you denied making comments towards the reporting officer. That she misunderstood you. You have failed to provide any evidence to show that.

> A memo from [the] reporting officer stat[ed] [that] on numerous occasions [Petitioner] had confronted the reporting officer and made inappropriate comments regarding her daily work activities and her authority. [Petitioner] was warned to stop but continued.
>
> At the DHO hearing the DHO relied upon [the] greater weight of evidence and [the] statement of the reporting officer that on March 3, 2016 at approximately 8:25 p.m. while conducting rounds in C-1 on the upper tier [she] passed you[, Petitioner] [ ] and you made a comment towards the reporting officer and said "Stop looking at me like that." The reporting officer asked you what did you say and you repeated yourself. You continuously make[ ] small remarks directed to the reporting officer and have been warned to stop. You denied the charge by stating that a[ll] that was wrong. That you never made those comments. That she was the one who talked to you. That you did say that she was working in the unit for the next 30 days. That yes she did search your cell and did take your headphones and you tried getting them back. That yes you did say not to talk to you because other inmates were making comments about her. Though you denied making comments towards the reporting office. That she misunderstood you. You have failed to provide any evidence to show that.
>
> You did not present any other evidence to dispute your offense. Therefore, by the reporting officer['s] statement that you continuously made small remarks directed to the reporting officer and were warned to stop in which you did not. Supporting memo describing several of the incidents which indicated you continued to make comments/harassing alarms or annoys towards her. The DHO finds that you did commit the prohibited

As punishment for violating Code 225, the DHO sanctioned Petitioner with 15 days of disciplinary segregation, 45 days' loss of visits and telephone privileges, and 45 days commissary restriction. Further, Petitioner lost 14 days of good conduct time.

## II. <u>"Some Evidence" Supported the DHO's Finding</u>

In his first ground for habeas relief, Petitioner alleges "[t]he charged offense does not support the mentioned conduct. The essence of the involved officers' testimony is fabricated [and without] merit." (Doc. 1 at 7.) For supporting fact, Petitioner wrote, "[t]he officer traveled to great lengths to ensure that the incident report would be upheld, by issuing multiple infractions: 225, 298, 312." *Id*. at 8. It appears Petitioner is alleging that the evidence at the disciplinary hearing was insufficient to show that he stalked CO Espinoza.

4

## A. Standard of Review

When a prison disciplinary proceeding may result in the loss of good time credits, due process requires that the prisoner receive: (1) advance written notice of at least 24 hours of the disciplinary charges; (2) an impartial hearing body; (3) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (4) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1984) (citing *Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974)). Further, due process requires that a disciplinary decision be supported by "some evidence." *Id*. at 455 (citing *United States ex rel. Vatauer v. Comm'r of Immigration*, 273 U.S. 103, 106 (1927)).

The Supreme Court "has recognized that a governmental decision resulting in the loss of an important liberty interest violates due process if the decision is not supported by any evidence." *Id*. at 455 (internal citations omitted). The "some evidence" standard "is met if 'there was some evidence from which the conclusion of the administrative tribunal could be deduced.'" *Id* (citing *Vatauer*, 273 U.S. at 106). The Court does not need to examine the entire record, independently assess the credibility of witnesses, or weigh the evidence in order to determine whether the standard is satisfied. *Id*. "Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id*. at 455-56 (internal citations omitted). Therefore, the Due Process Clause does not require the Court to "set aside decisions of prison administrators that have some basis in fact." *Id*. at 456.

## B. The DHO's Finding Was Properly Supported by "Some Evidence"

The record reflects that, in this case, the disciplinary hearing complied with the procedural due process requirements delineated by the United States Supreme Court. *See Wolf*, 418 U.S. at 563-72. Petitioner was given more than 24 hours' notice of the disciplinary charges, had an

5

opportunity to call witnesses, and was given a written statement by the DHO of the evidence the DHO relied on and the reasons for the disciplinary action.[3]

Due process also requires that the DHO's decision be supported by "some evidence." *Hill*, 472 U.S. at 455. The standard for reviewing prison disciplinary findings as set forth in *Hill*, is "minimally stringent." *Cato v. Rushen*, 824 F.2d 703, 705 (9th Cir. 1987). The Court will not re-weigh the evidence or make its own assessment as to the credibility of the witnesses. *Hill*, 472 U.S. at 455. If there is any reliable evidence in the record to support the disciplinary findings, the "some evidence" standard is satisfied, and the decision must be upheld. *Powell v. Gomez*, 33 F.3d 39, 40 (9th Cir. 1994); *Hill*, 472 U.S. at 455-56.

The evidence presented at the disciplinary hearing and relied upon by the DHO included that statements of CO Espinoza from the incident report. Petitioner denied making any comments to DO Espinoza, stating, "I never made those comments.[ ] She was the one that talked to me." The DHO "relied upon [the] greater weight of evidence and [the] statement of" CO Espinoza in finding that Petitioner "failed to provide any evidence to show that" Petitioner did not make any comments towards CO Espinoza or that CO Espinoza misunderstood Petitioner. Further, the DHO held Petitioner "did not present any other evidence to dispute your offenses."

The DHO's finding turned on whether he believed the complaining witness, CO Espinoza, or Petitioner. He found CO Espinoza to be more credible and accepted her version of events. The Court will not re-assess the credibility of the witnesses on habeas review.

For all the reasons contained in the DHO's report, the Court finds that "some evidence" exists to support a finding that Petitioner committed the prohibited act of stalking of a staff member. Although the evidence against Petitioner was not overwhelming, his determination "was not so lacking in evidentiary support as to violate due process." *Hill*, 472 U.S. at 457.

---

[3] The Court will discuss whether Petitioner had an impartial hearing body *infra*.

In his request for Administrative Review and his habeas petition before this Court, Petitioner contends CO Espinoza acted inappropriately towards him on several different occasions and filed a "fictitious incident report." (Doc. 19.) However, Petitioner was given the opportunity to make these statements to the DHO. Petitioner's protestations of his own innocence do not alter the conclusion that the DHO's decision was supported by "some evidence."

### III. The DHO Did Not Demonstrate Bias

In his second ground for habeas relief, Petitioner alleges the DHO was biased against him. Specifically, Petitioner states, "[t]he DHO abused his authority by automatically deeming [him] as being guilty, which deprives me of due process," and the DHO used the "meritless" memo prepared by CO Espinoza to hold Petitioner "accountable." (Doc. 1 at 8.) Respondent counters that Petitioner waived this claim by failing to object during the hearing. (Doc. 13 at 4 (citing *Ortiz v. Zuniga*, 2016 WL 6039010, at *8 (E.D. Ca. Oct. 14, 2016)). Further, Respondent contends the claim fails on the merits. *Id*. at 5.

#### A. Standard of Review

A fair trial in a fair tribunal is a basic requirement of due process that applies in prison disciplinary hearings. *In re Murchison*, 349 U.S. 133, 136 (1955); *Wolf*, 418 U.S. at 570-71. Fairness requires an absence of actual bias and the probability of unfairness. *Murchison*, 349 U.S. at 136. There is a presumption of honesty and integrity on the part of decision makers which may be overcome by evidence of a risk of actual bias or prejudgment based on special facts and circumstances. *Withrow v. Larkin*, 421 U.S. 35, 46-47 (1975). The mere fact that a decision maker denies relief in a given case does not demonstrate bias. *Strivers*, 71 F.3d at 742.

#### B. Petitioner Has Not Established DHO Bias

Here, there is no basis to conclude that the DHO had, or even appeared to have, any prior involvement or improper connection with Petitioner's case. Further, there is no evidence of any

predisposition or prejudgment.  The DHO's report reflects CO Espinoza's version of facts, because the DHO credited CO Espinoza's version of facts over Petitioner's.

Under these circumstances, there is no basis to rebut or otherwise undermine the presumption that the DHO was not impartial.  Accordingly, Petitioner's claim of bias will be denied.

**IV.    Conclusion and Order**

The Court hereby ORDERS that:

1. The petition for writ of habeas corpus is DENIED; and

2. The Clerk of Court is DIRECTED to enter judgment for Respondent.

IT IS SO ORDERED.

Dated:    **October 22, 2018**                              /s/ *Sheila K. Oberto*
                                                                                    UNITED STATES MAGISTRATE JUDGE